to our fifth case this morning, Westmoreland v. Hughes. Mr. Morrissey. May it please the Court. My name is Patrick Morrissey, and I am one of the attorneys for the plaintiff appellant Eugene Westmoreland. The Prison Litigation Reform Act requires prisoners to exhaust remedies that are available. A prisoner follows this duty by adhering to the prison's specific rules and deadlines. When an administrative remedy is not available, a prisoner does not have to exhaust before bringing suit. Mr. Westmoreland was at the Cook County Jail when he initiated the suit against the Illinois Department of Corrections. He's a wheelchair user, and he was waiting to be transferred to the Northern Reception Center. And he alleges the showers at this facility are not compliant with the federal standards. The reception center has 24 housing units. There are two showers on the first floor of these housing units. And he alleges none of these showers have seats for a wheelchair user to safely shower. In addition, most of these showers don't even have grab bars to help a wheelchair user. Mr. Westmoreland brought this case for declaratory relief and injunctive relief, individually and on behalf of a punitive class. The district court correctly found that when Mr. Westmoreland initiated this case, he did not have any available remedies. Nevertheless, the court erroneously applied the Prison Litigation Reform Act to require that Mr. Westmoreland, despite having Article III standing to bring this case, must wait until he was transferred to the Northern Reception Center where remedies would there be available, and that he then would have to follow those remedies before bringing this case. This interpretation is incorrect, and it's inconsistent with the text of the Prison Litigation Reform Act and the case law interpreting this statute. The Prison Litigation Reform Act does not require exhaustion of the remedies that are unavailable at the time of filing the suit, nor does it impose a duty on a prisoner to delay filing until remedies later become available. On a final point, there's this issue about whether Mr. Westmoreland's claim is moot. This case, the plaintiff moved for class certification and preliminary relief to request the IDOC to establish some type of policy to help people shower that use wheelchairs, and these were filed while Mr. Westmoreland was detained at the Northern Reception Center. Mr. Morrissey, what impact should it have here that your client didn't even attempt to exhaust his administrative remedies? I know he's saying they're unavailable, but there's evidence that they do have administrative remedies there. No attempt was even made for us to make that assessment. That's correct, Your Honor, because when the case was filed, Mr. Westmoreland didn't have any available remedy. The IDOC could have crafted some rule that allows people that are outside their facility to use the grievance procedure, but that rule wasn't set in place by the IDOC. Is there any case law anywhere that says if you are at a different facility when you want to grieve something and you know you're going to be transferred to another one that you don't have to comply with the exhaustion, that seems to completely undercut the purpose of the PLRA? Well, Your Honor, if the person was within the IDOC system, I can see how the court's analysis may be appropriate, but Mr. Westmoreland was at the Cook County Jail. Why wouldn't that undermine the whole purpose of the PLRA, which is to give the institution notice to correct the grievance? He didn't even try to do that. Well, Your Honor, the law is that prisoners are required to exhaust administrative remedies they're told about, not remedies that they're not told about. They're not required to divine. Well, he wasn't there yet to know what the administrative remedies were. That's correct, Your Honor. It seems like you're trying to get around the requirements of the PLRA by saying he's at a different facility or in the custody of somebody else so he doesn't have to comply with them. If the Cook County Jail, within their procedures, allowed people to raise these issues and transmitted it to the Illinois Department of Corrections, that would have been an available remedy Mr. Westmoreland could have pursued. Why didn't he do something once he got to the facility? Why didn't he attempt to exhaust once he got to the NRC? The district court asked Mr. Westmoreland that question when the parties had a preliminary injunction hearing, and Mr. Westmoreland didn't provide any answer. He said that there weren't many social workers that came around and that he did not pursue the administrative remedies at the facility. I think you'd have a stronger argument of unavailability if there had been an attempt in the first place. At a final note, Your Honor, the issue about the inherent transitory exception would apply in this case if the court determined that Mr. Westmoreland did not have any available administrative remedies at the time this case was brought. The district court correctly determined that this is a situation that it's uncertain that a claim will be alive enough for a court to rule on a motion for class certification, and also there's a constant group of people that have suffered the deprivation complained of. In conclusion, we request that the court reverse the district court's finding and remand. Thank you. Thank you, Your Honor. Mr. Studer? May it please the court. I'm John Studer on behalf of Defendant Appley Hughes. The judgment should be affirmed. Westmoreland filed this lawsuit before he arrived at the center and without even trying to file a grievance, let alone exhaust administrative remedies. This has two implications. One, his case is moot and the inherently transitory exception does not apply, and two, he failed to exhaust administrative remedies as a matter of law. The only ground that Westmoreland raises for reversal is that remedies were not available to him because at the precise moment he filed the lawsuit, he could not yet file a grievance. But he hasn't identified any case that adopts an early filing exception, and the logic of his argument has been squarely rejected by Woodford and this court's opinion in Pozo. He was required to file in the place and at the time required by the department's procedural rules. This brings me to the two grounds that support affirmance. The first is the district court correctly held that the case was moot. It's undisputed that his individual claim was moot because he sought only future-looking relief, and once he was transferred from the center, he could not benefit from a judgment in the case. He tried to save jurisdiction by invoking the inherently transitory exception, but as the district court correctly noted, he was not a suitable class representative given the uniquely strong exhaustion defense as to him, and without a class, the inherently transitory exception does not apply. There would be a second ground for affirmance in that he failed to exhaust as a matter of law. There are no factual disputes about exhaustion here. Everyone agrees that he didn't try to file a grievance and that the only issue he raises is the purely legal one about remedies being unavailable because he filed before he arrived at the facility. How could somebody who's being held at the NCR facility ever successfully seek injunctive relief for the shower claim? Because it's a holding facility, my understanding from the record, where they get designated once they're there, so they know they're only going to be there a short amount of time, and the record supports that the average defendant is only there a short amount of time. It doesn't seem like that time is long enough that a claim like this for injunctive relief could ever be successful. I would not agree that it could never be brought. By that, I'm sorry, I mean get thoroughly exhausted so that they could bring it while they're still there. I think Your Honor is correct that the typical stay at the facility is short. It's about a month to a month and a half, which was the same for Westmoreland. There are some examples of individuals who are at the center for about a year or more, so I wouldn't agree that it's never possible for someone to have fully exhausted and still have Article III standing to bring a claim that's seeking only injunctive relief. To the point that it's more difficult to find a named class representative who has fully exhausted, I would say that they could still exhaust and seek money damages. As this Court has recognized in other contexts, a case seeking money damages has the potential to establish a precedent, and money damages can influence the future conduct of the parties. But you would agree it would be hard to bring a class based on injunctive relief given the requirements and the facts of this particular facility? I think it would be more challenging than an ordinary facility, but I wouldn't agree that there's no such plaintiff that could bring such a case. And I would also point out that there is an emergency grievance procedure. So for things that involve imminent bodily harm or irreparable injury, there's an opportunity to expedite through the grievance process. We don't know what would have happened if he had pursued that here because he just didn't. To a certain extent, we're left to act as seers, which this Court has cautioned against. At the end of the day, he made no effort to exhaust administrative remedies, and therefore there's no jurisdiction here. And even if there were, he failed to exhaust as a matter of law. If there are no further questions, I would ask that this Court confirm the judgment. Thank you. Mr. Morrissey. The District Court, on page 10 of its opinion, talks about Mr. Westmoreland being caught in the horns of a dilemma where he's seeking to obtain relief to help others. It's the defendant's burden to show that there's available administrative remedies to pursue for an individual. In this case, on page 6 of the opening brief, there's an example of people who attempted to file administrative remedies while at the reception center. There's one of these individuals, Florencio Craig, who in fact did file a complaint about the inability to use the shower. He did mark it as an emergency, and it was returned to him as not an emergency. He then had to pursue another grievance where he complained about the exact same thing, and he never received this grievance back until he was transferred to his permanent facility. The record shows that this grievance process at the reception center requires a social worker to receive the document. It then must be provided to the warden. After this grievance is received by the inmate, which may take more than a few weeks, the person then has to send it to Springfield. And the internal rules of the IDOC say that the director may take up to six months to address a grievance. The overwhelming majority of the people that stay at this reception center are there for about 24 days. People who use wheelchairs, like Mr. Westmoreland, stay there longer because there are very few places in the IDOC that can accept wheelchair users. That's why he stayed there for 42 days. The defendant has not met its burden that administrative remedies are available for people at the IDOC, and when Mr. Westmoreland initiated this case, there were no administrative remedies available to him to pursue about this precise issue in the prison system. Thank you. Thank you. Our thanks to all counsel. We'll take the case under advisement.